Magistrate Judge Brian A. Tsuchida

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JESUS CRISTERNA LUCAS,<br><br>Defendant. | CASE NO.   MJ25-366<br><br>COMPLAINT for VIOLATION<br><br>Title 21, United States Code,<br><br>Sections 841(a)(1) and 841(b)(1)(A) |

BEFORE, Brian A. Tsuchida, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE

### (Distribution of a of Controlled Substance)

On or about November 26, 2024, in Everett, within the Western District of Washington, and elsewhere, the defendant JESUS CRISTERNA LUCAS, did knowingly distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl)], a substance controlled under Title 21, United States Code.

Complaint - 1
*United States v. Jesus Cristerna Lucas*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that the offense involved 400 grams or more of a mixture of substance containing a detectable amount of fentanyl.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A).

And the complainant states that this Complaint is based on the following information:

I, JARED GIBB, being first duly sworn on oath, depose and say:

**AGENT BACKGROUND AND INTRODUCTION**

1.      I am a Special Agent of the Drug Enforcement Administration (DEA), and have been so employed since February 2009. I am currently assigned to the DEA Tacoma Resident Office (TRO) in the Seattle Field Division.  I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for, violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses.

2.      I received 20 weeks of specialized drug law enforcement training at the DEA training academy in Quantico, Virginia, from September 2008 to February 2009. The training curriculum included comprehensive, instruction in: basic and complex drug-trafficking investigations, identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, undercover operations and financial/money laundering investigations.

3.      During my career as a Special Agent, I have been involved in more than one hundred drug-trafficking investigations of varying scope and complexity, from street-level dealers to international drug-trafficking organizations. I was previously assigned to DEA offices in Afghanistan and Colombia, where I worked with host-country counterparts to conduct investigations of international drug-trafficking organizations and money-laundering organizations. I have become familiar with the

Complaint - 2
*United States v. Jesus Cristerna Lucas*

methods used by individuals engaged in the manufacture, transportation and trafficking of controlled substances. I have directed the actions of confidential informants and I have acted in an undercover capacity on numerous occasions. I have interviewed informants, suspects, defendants and other experienced drug traffickers regarding the methods and practices utilized by drug traffickers and drug trafficking organizations. I have monitored informant conversations with drug traffickers, as well as drug-related conversations between drug traffickers as part of court-authorized interception of wire communications. I have participated in the preparation of numerous affidavits and the execution of search and arrest warrants for violations of federal and state drug laws. I am familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed, as well as methods of operation and communication utilized by drug traffickers.

4.      The facts set forth in this affidavit arise from my personal and direct participation in the investigation, my experience and training as a Special Agent, my conversations with witnesses and other law enforcement personnel, including consultations with other agents participating in this and related investigations, and my review of relevant documents and reports. I have not included every fact known to me or other investigative personnel concerning this investigation. My specialized training and experience in drug investigations as well as the assistance and input of experienced fellow investigators, form a basis for my opinions and conclusions, which I drew from the facts set forth herein.

5.      As set forth below, there is probable cause to believe that defendant JESUS CRISTERNA LUCAS, committed the count alleged above. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every fact known concerning this investigation. I have set forth only the facts I believe are essential for a fair determination of probable cause.

Complaint - 3
*United States v. Jesus Cristerna Lucas*

## SUMMARY OF PROBABLE CAUSE

6.      Investigators of the U.S. Drug Enforcement Administration (DEA) and the U.S. Department of Homeland Security (HSI) are investigating a drug-trafficking organization ("DTO") that is based in Mexico and is distributing fentanyl, methamphetamine, heroin and other illegal drugs in western Washington, including Pierce, King, and Snohomish Counties.

7.      Pursuant to this investigation, in November 2024, an HSI undercover agent (hereafter "UCA") began to communicate by telephone with a male suspect who uses telephone number (480) 758-8861 (TT65). UCA is posing as a person who is in the market to purchase large quantities of drugs. The user of TT65 (hereafter "SUSPECT 1") told UCA that he can supply drugs to UCA in the Seattle, Washington area.  During a series of recorded telephone calls in November 2024, UCA negotiated to purchase 5,000 fentanyl pills from the SUSPECT 1 in the Seattle area. On November 25, 2024, UCA called TT65 and spoke to SUSPECT 1. UCA arranged to meet SUSPECT 1 the next day in Everett, Washington to purchase the pills.

8.      On the morning of November 26, 2024, UCA communicated with SUSPECT 1 by WhatsApp Messenger. SUSPECT 1 told UCA that he would send his associate to deliver the pills to UCA in Everett.  Over the course of the morning hours, UCA and SUSPECT 1 (using TT65) exchanged a series of messages whereby they discussed the impending delivery of fentanyl.

9.      At 11:36 a.m., UCA received text messages via WhatsApp Messenger from an individual utilizing telephone number (206) 429-1899 (TT66). The user of TT66 was later identified as Jesus CRISTERNA LUCAS (hereafter "CRISTERNA"), as described below. CRISTERNA (using TT66) told UCA that he was the delivery driver and would meet UCA to deliver the pills.

10.     At 12:50 p.m., UCA received a telephone call from CRISTERNA (using TT66). CRISTERNA requested that UCA send him the address of the meeting location,

which was the parking lot of a business in Everett. Over the next two hours, UCA and CRISTERNA continued to exchange messages and voice calls to further arrange the meeting. Agents established surveillance at the meeting location. The UCA then arrived and parked in the parking lot. UCA was accompanied by a second undercover agent (hereafter "UCA2").

11. At approximately 2:30 p.m., UCA received a telephone call from CRISTERNA, during which UCA directed CRISTERNA to his/her location in the parking lot. CRISTERNA told UCA that he was driving a silver Kia. A few minutes later, as UCA and CRISTERNA were conversing over a phone call, UCA observed a gray Kia Rio driving through the parking lot. At that time, CRISTERNA requested that UCA change the meeting location because he did not like the location. UCA and CRISTERNA continued to communicate via text messages and phone calls and agreed to conduct the meeting at a nearby intersection in Everett.

12. At approximately 2:55 p.m., UCA observed CRISTERNA arrive at the intersection in the Kia Rio. CRISTERNA stepped out of the Kia Rio and sat in the front passenger seat of the undercover vehicle. CRISTERNA handed UCA2 a clear plastic bag containing blue pills and handed the bag to UCA2. UCA2 handed CRISTERNA Official Funds to pay for the pills. CRISTERNA counted the money. CRISTERNA then stepped out of the UC vehicle, returned to the Kia Rio and drove away.

13. Following the undercover purchase on November 26, 2024, UCA and UCA2 viewed a Washington Department of Licensing photograph of CRISTERNA. Both agents positively identified the individual in the photograph as the same person utilizing telephone number (206) 429-1899 (TT66) and driving the Kia Rio who delivered the fentanyl pills during the undercover transaction.

14. On December 18, 2024, the pills delivered by CRISTERNA were analyzed by the U.S. Customs and Border Protection Laboratories and Scientific Services

Complaint - 5
*United States v. Jesus Cristerna Lucas*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Directorate. Laboratory analysis showed that the pills contained fentanyl. The net weight of the pills was determined to be 501.3 grams.

15.     Based on the above facts, I respectfully submit that there is probable cause to believe that JESUS CRISTERNA LUCAS did knowingly distribute a controlled substance, fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

_____
JARED GIBB, Complainant
Special Agent, DEA

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.

Dated this 16th day of June, 2025.

_____
Brian A. Tsuchida
United States Magistrate Judge

Complaint - 6
*United States v. Jesus Cristerna Lucas*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970